IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | | |
|---|---|---|
| HAROLD LILLEBO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. EP-12-CV-330-MAT |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION,[1] | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals the decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI) under Title XVI of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Appendix C of the Local Court Rules of the Western District of Texas. For the reasons below, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

1

## I. PROCEDURAL HISTORY

Plaintiff was born on July 10, 1984. (R. 171).[2] On April 12, 2006, he filed an application for SSI in which he alleged disability since January 1, 2008[3] due to right ear hearing loss, a speech impairment, and a learning disability. (R. 171-173, 203).[4] After his application was denied initially and again upon reconsideration, Plaintiff requested a hearing. (R. 95-99, 105-108, 109-110). On May 7, 2008, Plaintiff appeared with his attorney for a hearing before an Administrative Law Judge ("ALJ"). (R. 29-47). His application for benefits was denied by the ALJ's written decision issued on October 7, 2008. (R. 79-84).

On May 12, 2009, the Appeals Council vacated the decision and remanded the case for consideration of treating source records and opinions. (R. 85-89). Following a new administrative hearing on June 9, 2010, the ALJ issued an unfavorable decision on August 23, 2010. (R. 14-23, 48-72). On June 22, 2012, the Appeals Council affirmed the ALJ's decision to deny benefits, thereby making it the final decision of the Commissioner. (R. 1-6). This appeal followed.

## II. ISSUE PRESENTED

Plaintiff contends the ALJ's finding that his mental impairment does not meet or equal Listing 12.05C is not supported by substantial evidence.

---

[2] Reference to the record of administrative proceedings is designated by "(R. [page number(s)])."

[3] In his application, Plaintiff alleged disability since January 20, 2006. (R. 171). In his disability report, he alleged disability since July 10, 1984. (R. 218). At the first administrative hearing on May 7, 2008, the onset date was amended to January 1, 2008. (R. 33, 61).

### III. DISCUSSION

A. Standard of Review

This Court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied in evaluating the evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In determining whether there is substantial evidence to support the findings of the Commissioner, the court must carefully examine the entire record, but may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). If the Commissioner applied the proper legal standards and her findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.* at 360.

B. Evaluation Process and Burden of Proof

Disability is defined as the "inability to engage in substantial gainful activity by reason of any

medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and, (5) whether the impairment or combination of impairments prevents the claimant from doing any other work. 20 C.F.R. § 416.920. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work. *Id.*

C. The ALJ's Decision

In her written decision, the ALJ found Plaintiff had not engaged in substantial gainful activity

since January 1, 2008, the amended onset date. (R. 16). At the next step, the ALJ determined Plaintiff has severe impairments consisting of hearing loss and a mood disorder. *Id.* The ALJ determined Plaintiff's impairments of seizure disorder, speech impediment, and asthma are non-severe impairments. (R. 17). She further determined Plaintiff's borderline to low average IQ[5] is a non-severe impairment. (R. 18).

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-19). In making this determination, the ALJ specifically addressed the criteria of Listings 12.04 (Affective Disorders) and 12.05 (Mental Retardation)[6] of 20 C.F.R. Part 404, Subpart P, Appendix 1. With regard to listing 12.05C, the ALJ stated the criteria were not met because Plaintiff "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The [Plaintiff's] additional impairments do not impose any additional or significant work-related limitations." (R. 19).

Before reaching step four, the ALJ found Plaintiff retains the residual functional capacity [7] ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations: can work in an area with no more than moderate noise levels, and must avoid respiratory

---

[5] The range of "borderline intellectual functioning" includes IQ scores within the range of 71 to 84. *See Boyd v. Apfel*, 239 F.3d 698, 702 n. 5 (5th Cir. 2001) (citing DSM-IV, p. 45).

[6] Effective August 1, 2013, Listing 12.05 refers to "intellectual disability" rather than "mental retardation." *See Change in Terminology: "Mental Retardation" to "Intellectual Disability,"* 78 Fed. Reg. 46,499 (Aug. 1, 2013). The substance of listing 12.05, including the criteria, remains otherwise unchanged.

[7] Residual functional capacity is defined in the regulations as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a).

irritants, unprotected heights and hazardous moving machinery. The ALJ also found Plaintiff can perform work requiring short, simple instructions, can make simple work-related decisions in an environment with few changes and no public contact, and should work primarily with things rather than with people. (R. 19).

The ALJ did not make a finding at step four because she found Plaintiff has no past relevant work as defined in the regulations. The ALJ determined Plaintiff's past jobs do not constitute past relevant work under 20 C.F.R. § 416.965 because his earnings were below the threshold. (R. 22). At step five, the ALJ relied on the testimony of a vocational expert (VE)[8], to find Plaintiff is capable of making a successful adjustment to other work that he can perform, including the representative occupation of dishwasher. (R. 21-22). Based on the VE's testimony and using section 204.00 in the Medical Vocational Guidelines as a framework, the ALJ determined that Plaintiff was not disabled because he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. 22).

D. Analysis of Plaintiff's Claim

At the third step of the sequential evaluation, the ALJ determines whether the medical evidence meets or equals the criteria of a listed impairment in Appendix 1 of the regulations. 20 C.F.R. § 416.920(d). The determination of whether a claimant meets or equals the requirements of any impairment in the Appendix 1 Listing of Impairments ("the Listings") is an issue reserved to the Commissioner. 20 C.F.R. § 416.927(d)(2). The Listings describe conditions and impairments that

---

[8] At the hearing, the VE classified Plaintiff's past work experience in terms of exertional level and skill level as follows: dishwasher- medium, unskilled; housekeeper- light, unskilled; presser- light, unskilled. (R. 69). The VE further testified a hypothetical person with the same age, education and RFC as the Plaintiff could perform the job of dishwasher which exists in significant numbers in the regional and national economy. (R. 69-70).

are sufficiently severe to prevent an individual from engaging in *any* gainful activity, not just "substantial gainful activity," regardless of age, education or work experience. 20 C.F.R. § 416.925(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Thus, Plaintiff is automatically entitled to benefits if his impairment meets or equals the criteria of one of the listed impairments in Appendix 1 to Subpart P of Part 404. 20 C.F.R. § 416.920(d).

Because the Listings were designed to operate as a presumption of disability that makes further inquiry unnecessary, the medical criteria of the Listings are more restrictive than the statutory disability standard. *Sullivan*, 493 U.S. at 532. The burden of proof rests with Plaintiff to provide and identify medical signs and laboratory findings that support all criteria of a listed impairment. *Sullivan*, 493 U.S. at 530; *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). The listings criteria are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). A mere diagnosis of a condition will not suffice. "For a claimant to show that his impairment matches a listing, it must meet all of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530.

At issue in this case is Listing 12.05 which addresses intellectual disability. To be presumptively disabled under this listing, Plaintiff must meet all of the following criteria:

> 12.05 *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> 
> ...
> 
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function[.]

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05C (2008). To meet the requirements of this listing, the

claimant must satisfy the diagnostic description in the introductory paragraph as well as the specific factors of subsection C. *See Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009).

In the present case, the ALJ considered whether Plaintiff's mental impairments, singly or in combination, met the criteria of Listings 12.04 and 12.05, and she specifically considered Listing 12.05C. (R. 18-19). The ALJ noted in her opinion that Plaintiff had IQ testing done as a schoolchild[9] in which he attained a verbal score of 70, a performance IQ of 70, and a full scale IQ of 68 +/- 5.[10] (R. 18). The ALJ further noted Plaintiff attained a score of 87 on a nonverbal IQ test.[11] *Id.* The ALJ stated Plaintiff was in special education classes at school because of auditory and speech impairment. *Id.* The ALJ reported an educational diagnostician noted that Plaintiff's IQ scores placed him in the low average range of intelligence. *Id.* Finally, the ALJ noted Plaintiff had not undergone IQ testing as an adult. She concluded Plaintiff's mental impairment did not meet the criteria of listing 12.05C because he "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The [Plaintiff's] additional impairments do not impose any additional or significant work-related limitations." (R. 19).

Plaintiff contends he should have been found disabled under listing 12.05C because his valid IQ scores (verbal score of 70, performance score of 70, and full scale score of 68 +/- 5) are within

---

[9] The record evidence shows Plaintiff was 9 years, 3 months old at the time of testing. (R. 940-951).

[10] Under the regulations, where the verbal, performance and full scale IQs are provided in the Wechsler series, the Commissioner uses the lowest of the three in conjunction with Listing 12.05. 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App.1, 12.00(D)(6)(c). *Williams v. Comm'r of Social Security*, 2014 WL 1330310, at *4 (M.D. La. 2014).

[11] It appears the ALJ was referring to Plaintiff's results on the Test of NonVerbal Intelligence ("TONI"). (R. 948).

the required range, and his impairments of severe mood disorder and severe hearing loss impose additional and significant work-related limitation of function as evidenced by the non-exertional limitations included in the ALJ's RFC assessment (work requiring short, simple instructions; making simple work-related decisions in an environment with few changes and no public contact; and, working primarily with things rather than with people; working in an area with no more than moderate noise levels; and, avoiding respiratory irritants, unprotected heights, and hazardous moving machinery).[12]

The Commissioner maintains the ALJ's determination that Listing 12.05C was not met turned on the fact that Plaintiff could not show he met the listing's IQ requirement. She contends the ALJ properly discredited the IQ scores derived from testing when Plaintiff was 9 years old. The Commissioner argues: (1) the regulations recognize IQ scores tend to stabilize at age 16, and scores obtained between the ages of 7 and 16 should be considered current for only two years when the IQ score is 40 or above; and, (2) Plaintiff's IQ scores were too remote in time, and therefore not a valid reflection of his intellectual functioning for the adjudicated period at issue (January 1, 2008 through August 23, 2010) when he was 23 to 26 years old. (Def's Brief, ECF No. 18, pp. 5-6). Relying on *Hamilton v. Shalala*, 39 F.3d 319 (5th Cir. Oct. 17, 1994), the Commissioner contends that because Plaintiff cannot show he meets Listing 12.05C's IQ requirement, no further analysis of the other listing criteria is needed.

---

[12] Plaintiff argues the "initial requirements" of Listing 12.05 are satisfied because his IQ scores are within the range of 60 to 70, and he was under the age of 22 at the initial onset of the impairment. (Pl's Brief, ECF No. 17 at p. 5). This argument misapprehends the requirements of the introductory paragraph of Listing 12.05 which requires a showing of not only significantly subaverage intellectual functioning, but also "deficits in adaptive behavior" manifested before age 22. *Randall*, 570 F.3d at 659-60. In any event, there is no discussion in the ALJ's opinion of the requirements of the introductory paragraph.

The Commissioner is correct that the ALJ may make factual determinations on the validity of IQ scores and may discount an IQ score as invalid so long as there is substantial evidence in the record to support the conclusion. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). She may decide not to fully credit them if there is evidence that shows they are unreliable, invalid, or inconsistent with other evidence contained in the record. *See Cole v. Barnhart*, 69 F. App'x 658 (5th Cir. 2003); *Jones v. Barnhart*, 2007 WL 628768, at *8 (W.D. Tex. Feb. 21, 2007). "However, because ALJ's [sic] are not physicians, they may not hastily reject I.Q. scores." *Carr v. Astrue*, 2008 WL 4326344, at *4 (N.D. Miss. Sept. 22, 2008) (reversing and remanding where ALJ provided no discussion regarding the validity of claimant's IQ scores).[13]

In this case, the exact basis for the ALJ's determination that Plaintiff's mental impairment did not meet Listing 12.05C is unclear, and as a result, subject to several interpretations. It is not clear if the ALJ found the Listing was not met because she rejected the IQ scores, and if so, which scores were rejected and for what reason(s), or if she determined the Listing was not met solely because, as she stated, "[t]he [Plaintiff's] additional impairments do not impose any additional or significant work-related limitations," (R. 19), or if she found neither prong of Listing 12.05C was met. Additionally, as stated earlier, in order to meet the requirements of Listing 12.05C, the claimant must satisfy the diagnostic description in the introductory paragraph **and** the specific factors of

---

[13] Significantly, consultative mental examiner Randall Rattan, Ph.D. recommended re-evaluation of Plaintiff's intellectual function on the basis of his previous [Wechsler Intelligence Scale for Children] results yielding a full scale IQ of 68. (R. 649). Dr. Randall further opined, "Reliance on a measure of non-verbal performance such as the now obsolete TONI, as the basis for a non-finding of possible mild mental retardation, would be considered spurious clinical reasoning. An examination of function using the [Wecshler Adult intelligence Scale] appears indicated." *Id.*

subsection C. *See Randall*, 570 F.3d at 659-60.[14] The ALJ did not make any express findings as to whether Plaintiff had the requisite deficits in adaptive functioning to satisfy the introductory paragraph of listing 12.05C.

Although not challenged by Plaintiff in this appeal, the Court notes the ALJ determined Plaintiff retains the RFC to perform work at all exertional levels (with the aforementioned non-exertional limitations) which includes performing very heavy work, i.e. lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. 20 C.F.R. § 416.967 (e). his finding appears inconsistent with the record evidence which shows Plaintiff is of small stature, standing about 5 feet tall and weighing about 90 pounds, and is "frail" in appearance. (R. 625, 647, 680).

The ALJ's decision must stand or fall with the reasons set forth in the decision, as adopted by the Commissioner. *Newton*, 206 F.3d at 455. In this case, the Court cannot discern with certainty the evidentiary basis for the ALJ's determination that Plaintiff's mental impairment does not meet Listing 12.05C. The Commissioner, and not the Court, resolves evidentiary conflicts. *Newton*, 209 F.3d at 452. The task of this Court is to determine if there is substantial evidence in the record as a whole which supports the ALJ's decision. *Chambliss*, 269 F.3d 520, 523 (5th Cir. 2001) (citing

---

[14] The Fifth Circuit has not yet specifically addressed whether a step two finding that an impairment is severe is the equivalent of the "significant work-related limitation of function" requirement of the second part of subsection C of Listing 12.05. However, the introduction to Listing 12.00 ("Mental Disorders") indicates this is the true standard. *Morris v. Colvin*, 2014 WL 1415004, at *6 (M.D. La. April 11, 2014) (citing *Henderson v. Astrue*, 2008 WL 269450 (N.D. Tex. Jan. 30, 2008); *Cargill v. Colvin*, 2013 WL 5526620 (N.D. Tex. Sept. 30, 2013)). Moreover, several Circuits have held that this requirement is satisfied when the additional impairment is "severe" under step two of the sequential evaluation. *Nieves v. Sec'y of Health and Human Servs.*, 775 F.2d 12, 14 (1st Cir. 1985); *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).

*Greenspan*, 38 F.3d at 240). As sufficient doubt has been cast as to whether substantial evidence supports the ALJ's decision, the Court finds this case should be remanded so the Commissioner can evaluate whether Plaintiff's mental impairment met or equaled Listing 12.05C during the relevant period.

## CONCLUSION

It is therefore ORDERED that the decision of the Commissioner be, and it is hereby, REVERSED and REMANDED for further administrative proceedings consistent with this opinion.

SIGNED and ENTERED this 30th day of September, 2015.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE